IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ADRIAN S. DIAZ,

    **Plaintiff,**

vs.                                                             No.  02cv1467 DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

    This matter is before the Court on Plaintiff's (Diaz') Motion to Reverse and Remand for a Rehearing **[Doc. No. 13]**, filed June 9, 2003, and fully briefed on September 2, 2003.  The Commissioner of Social Security issued a final decision denying Diaz' application for disability insurance benefits and supplemental security income.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is well taken and will be GRANTED.

### I.  Factual and Procedural Background

    Diaz, now thirty-four years old, filed his application for disability insurance benefits and for supplemental security income on August 21, 2001, alleging disability since July 24, 2001, due to chronic pain in his right foot and decreased sensation in his right lower extremity.  Tr. 11.  Diaz has a seventh grade education and past relevant work as a meat packer.  *Id.*  On June 5, 2002, Diaz appeared *pro se* at the administrative hearing.  On June 26, 2002, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Diaz "had a pinched nerve in his

right foot, an impairment that is severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No.4." Tr. 12. Specifically, the ALJ reviewed Listings 1.04B and 11.14. Id. The ALJ further found Diaz retained the residual functional capacity (RFC) to perform "the full range of light work." *Id*. As to his credibility, the ALJ found that Diaz' "testimony and complaints of pain and functional restrictions was (sic) not supported by the evidence overall in the disabling degree alleged and therefore, lacked credibility." *Id.* Diaz filed a Request for Review of the decision by the Appeals Council. On October 4, 2002, the Appeals Council denied Diaz' request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Diaz seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291

(10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20

C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Diaz contends the ALJ erred in finding he could perform the full range of light work.  Under the regulations, light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).  However, even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*  The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  SSR 83-10, 1983 WL 31251, * 6 (1983).

Diaz asserts the ALJ's RFC determination is contrary to Dr. Mario Trance's finding that he would not be able to do prolonged standing or walking which is required in order to perform the full range of light work.  On December 15, 2001, Dr. Mario Trance, an orthopedist, performed a consultative evaluation.  Tr. 100-103.  Dr. Trance noted the following:

> GENERAL FINDINGS**:**  There is slight contracture over the right big toe, a clawing deformity.  There is also some slight tightness over the right toe but can be relaxed after extension.  This is the same with the right toe over the right foot.  There is also some slight skin thickening over the right metacarpal phalangeal joints.  There is slight tenderness on palpation over the medial aspect of right foot.  The left foot also shows some calluses over the plantar aspect.  However, there is the presence of hair.  Measurements of the calves is equal at 36 cm bilaterally.  There are no signs of atrophy noted.
>
> MOTOR STRENGTH/MUSCLE BULK AND TONE: 5/5 in all extremities bilaterally using the upper and lower extremities.
>
> SENSORY EXAM:  Intact throughout except the right lower extremity which is 20 percent sensation using the pinprick test.

  REFLEXES:  2+ in all extremities bilaterally using the biceps, brachioradialis, triceps, patellar, and ankle reflexes.

  **DIAGNOSIS:**
  1. Chronic contracture of the tendons over the right big toe and the right second toe.
  2. Suspicious of peripheral neuropathy over the right lower extremity.

  **FUNCTIONAL ASSESSMENT:** Based on the history and physical examination, I do not expect any limitations on lifting or carrying. The claimant should have no limitations on postural tasks such as bending, stooping, and crouching. However, I expect some limitations in prolonged standing and walking. The ability to use the right foot is greatly limited by the contracture of the right big and right second toe. Chronic changes include calluses and skin thickening over the medial aspect of the right metacarpal phalangeal joint. These findings limit his tasks such as walking and standing. There are no hand held assistive devices needed for the claimant. I would not expect limitations in prolonged sitting. I do not expect any limitations in overhead reaching, handling of objects, or fine manipulations through the hands and fingers.

  Because of the subjective complaints of numbness over the right lower extremity and a physical finding of 20 percent sensation over the right lower extremity, the claimant may need an EMG or nerve conduction velocity study to expose the subjective complaint of numbness or neuropathic pain over the right lower extremity. The claimant was prescribed by his primary care provider to start using Neurontin. However, the claimant cannot afford this medication.

Tr. 102-03. Dr. Trance's evaluation provides objective medical evidence of a pain-producing impairment. And, although Dr. Trance did not indicate how many hours Diaz could stand in an 8-hour workday, he opined that Diaz had limitations in prolonged standing and walking. Dr. Trance also found Diaz' ability to use his right foot was greatly limited. Significantly, Dr. Trance suspected neuropathic pain and recommended an EMG or nerve conduction velocity study.

  On February 19, 2002, Dr. Bocian, a nonexamining agency consultant, completed an RFC Assessment form and opined Diaz could stand and/or walk at least 2 hours in an 8-hour workday. Tr. 113. The consultant relied on Dr. Trance's evaluation. The ALJ chose not to adopt this finding. Instead, the ALJ adopted the RFC assessment submitted by Dr. Nickerson. Dr. Nickerson, also a nonexamining agency consultant, completed an RFC assessment form on

5

December 28, 2001, and opined Diaz could stand and/or walk about 6 hours in an 8-hour workday.  Tr. 105.

As the trier of facts, the ALJ has the duty to resolve any conflict in the evidence  *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).  In this case, the agency's specialist found Diaz had limitations in prolonged standing and walking.  Because the specialist did not specify exactly how many hours Diaz could stand and/or walk in an 8-hour workday, two nonexamining agency consultants have interpreted Dr. Trance's finding quite differently.  The ALJ also failed to explain why he rejected Dr. Bocian's opinion.  These conflicting opinions by the nonexamining agency consultants impact on the ultimate issue of whether Diaz retains an RFC to perform substantial gainful activity.

In addition, Diaz reported to Dr. Trance that his primary care physician prescribed Neurontin for possible neuropathic pain.  Tr. 100.  Dr. Trance also reported Diaz had been treated by a local orthopedic doctor who diagnosed him with "myostatic contracture of the flexor pollicis longus and flexor digitorum communis" and "recommended a tendon lengthening procedure." *Id.* The Court recognizes that a claimant is responsible for furnishing medical evidence of claimed impairments.  20 C.F.R. § § 404.1512(a), (c) & 416.912(a), (c).  However, the Commissioner also has the duty to ensure that an adequate record is developed relevant to the issues raised. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). The ALJ's duty to develop the record in social security disability hearing is heightened when claimant is unrepresented. *Musgrave v. Sullivan*, 966 F.2d 1371 (10th Cir. 1992).

Based on the record as a whole, the Court finds that the ALJ's RFC determination is not supported by substantial evidence.  On remand, the ALJ should consult with Dr. Trance to clarify

exactly how limited Diaz is in his ability to stand and/or walk in an 8-hour workday. The ALJ also should order an EMG or nerve conduction velocity study to rule out neuropathic pain as recommended by Dr. Trance. Additionally, because objective medical evidence establishes a pain-producing impairment, the ALJ must evaluate Diaz' complaints of pain pursuant to *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987) and consider whether he may conclusively rely on the Medical-Vocational Guidelines or consult with a vocational expert. The ALJ also should request any available medical records to assist him in his decision.

The Court, however, expresses no opinion as to the extent of Diaz' impairments, or whether he is or is not disabled within the meaning of the Social Security Act. The Court does not require any result. This remand simply assures that the ALJ applies the correct legal standards in reaching a decision based on the facts of the case.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing **[Doc. No. 13]** is granted. This matter is remanded to allow the ALJ to consult with Dr. Trance regarding Diaz' standing and/or walking limitations and order an EMG or nerve conduction velocity study to rule out neuropathic pain. The ALJ also should evaluate Diaz' pain pursuant to *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), and reconsider whether it is appropriate to conclusively rely on the grids and consult a vocational expert if necessary. The ALJ also should request any available medical records.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

 

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**